UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE NELSON,

    Plaintiff,

v.                                              CASE NO. 6:18-CV-700-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## ORDER

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues the Administrative Law Judge (ALJ) erred by failing to properly consider her pain complaints and that the Appeals Council erred in denying her request for review of the ALJ's decision. After considering the parties' joint memorandum (doc. 18) and the administrative record, I find that the ALJ's decision that Plaintiff is not disabled is in accordance with the law and supported by substantial evidence. I also find the Appeals Council did not err in denying Plaintiff's request for review. I affirm the Commissioner's decision.

    *A.*    *Background*

Plaintiff Stephanie Nelson, born on May 22, 1971, was 39 years old on her alleged onset date of February 9, 2011. She earned an associate degree in computer-aided drafting and has prior work experience as a line cook (R.48). She is single, and lives with three roommates. Plaintiff's date of last insured is December 31, 2016. She alleges disability due to chronic asthma, bulging discs, herniated discs, carpal tunnel in her right hand, left knee replacement, right knee

1

compensation pain, tendonitis and bursitis in her right shoulder, and arthroscopy second digit (R. 225). She testified these impairments cause daily, chronic pain; she rates her pain as a three to a five on a scale of one to ten (with pain medication, heating pad, and Bio Freeze) (R. 55). Her right knee gives out once or twice a day. She has tried using a cane, but it did not help with steadiness and caused discomfort and pain (R. 57). When ambulating, she uses a crutch or a shopping cart; when shaving her legs in the shower she uses a shower chair (R. 57). Plaintiff testified she can walk twenty to thirty minutes at a time, and can stand fifteen to twenty minutes (R. 57-58). She assists with household chores such as small loads of laundry, sweeping, vacuuming, mopping, dusting, and cleaning dishes, but has to take frequent breaks (R. 59-60, 61). While she is able to get dressed on her own, she sits down to put her pants on as she loses her balance standing up (R. 60).

After hearing on January 25, 2017, the ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the cervical, lumbar, and thoracic spine; a right foot disorder; a bilateral knee disorder; a right shoulder disorder; asthma; obesity; and insomnia (R. 21). But the ALJ determined that Plaintiff is not disabled, because she retains the residual functional capacity (RFC) to perform less than a full range of sedentary work (R. 24). Specifically, the ALJ found Plaintiff restricted as follows:

> She could never climb ladders, ropes, or scaffold. She could never crawl. She could occasionally climb ramps or stairs, balance, stoop, kneel, or crouch. She required the option to sit/stand every 20-30 minutes for 5 minutes at a time without leaving the workstation. She could frequently reach with her right upper extremity. She should have avoided concentrated exposure to temperature extremes, vibration, pulmonary irritants, and workplace hazards.

(R. 24). The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work but could perform jobs that existed in significant numbers in the national economy, including the jobs

of charge account clerk, call out operator, and telephone quotation clerk (R. 34). The Appeals Council denied review (R. 1). Plaintiff, after exhausting her administrative remedies, filed this action.

### B. *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work

experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C. *Discussion*

1. *pain standard*

Plaintiff asserts the ALJ erred by failing to properly evaluate her testimony about her pain. Specifically, Plaintiff recognizes that the ALJ may reject a claimant's subjective testimony about pain but maintains that the ALJ failed to comply with the Eleventh Circuit's "pain standard." This standard, articulated in *Holt v. Sullivan*, requires: 1) evidence of an underlying medical condition and either a) objective medical evidence confirming the severity of the alleged pain, or b) that the objectively determined medical condition can be reasonably expected to give rise to the alleged pain. *Holt*, 921 F.2d 1221, 1223 (11th Cir. 1991). As both Plaintiff and the Commissioner indicate, the applicable regulation governing the evaluation of subjective complaints is 20 C.F.R.

4

§ 404.1529. Pursuant to the first step of this ruling and the applicable regulation, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. SSR 16-3p; 20 C.F.R. § 404.1529. For the second step, the ALJ evaluates the "intensity and persistence" of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. The ALJ should consider the following factors: 1) daily activities; 2) location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received to relieve pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(1), (c)(3); Social Security Ruling 16-3p.[1]

The ALJ's decision shows she followed the regulatory framework in determining Plaintiff's RFC. Specifically, in evaluating Plaintiff's subjective complaints, the ALJ stated she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 …" (R. 24). Although this is standard language, it directly addresses the

---

[1] Social Security Ruling 16-3p rescinded a previous social security ruling that concerned the credibility of a claimant. *See* SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the term "credibility" from its sub-regulatory policy because the Social Security Administration's regulations did not use that term. And SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.*

Eleventh Circuit's pain standard; it is not improper on its face if supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013). Here, the ALJ discussed Plaintiff's hearing testimony, pain questionnaires, medical evidence and opinion evidence (R. 24-33). In fact, the ALJ's decision includes a very detailed summary of the medical evidence, reflecting that the ALJ carefully considered Plaintiff's total left knee arthroplasty in February 2011, her bunionectomy in June 2011, her physical therapy, her pain management, her imaging reports, her injections in her right knee and shoulder, her right hallux toe problems, her asthma and shortness of breath, and her intermittent back pain. The ALJ also discussed that Plaintiff swam four days a week in 2012; reported using a cane at times in 2014 and 2015; smoked, had high blood pressure, and obesity; and her pain was often well-controlled with medication (R. 24-33).[2] In concluding that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms and limitations are not entirely consistent with the evidence, the ALJ provided substantial support. She stated:

> The undersigned finds the claimant's alleged allegations and testimony to be only partially consistent with the evidence. The medical evidence does not establish weakness, fatigue, pain, shortness of breath, anxiety or any other symptoms of the level and severity that would result in debilitating limitations. Nor does not medical evidence establish any medication side

---

[2] Plaintiff asserts the ALJ's statement that she swam four times a week is not supported by substantial evidence as she could not find support for that statement in her medical records. However, as the Commissioner indicates, the Pain Management of Central Florida progress notes show that on May 9, 2012, Plaintiff reported "going to pool, more exercise now doing well overall" (R. 441); on June 6, 2012, reported "going swimming x4 days" (R. 438); July 12, 2012, reported she was "very active this month doing a lot of swimming" (R. 435); and on August 1, 2012, reported "has been a little rough this month – very active. Swimming an extra day a week- residual pain, hard to function at work" (R. 432). Similarly, Plaintiff questions the ALJ's statement that she rated her pain as a 1-3; she maintains that her treatment records show she rated her pain as a 4-6. While my review shows that on some days Plaintiff described her pain as higher than 1-3, I agree with the Commissioner and find substantial support for the ALJ's assessment of Plaintiff's subjective pain symptoms. *See* doc. 18, p.21.

effects that would result in debilitating limitations, and while at hearing, the claimant reported restrictive side affects [sic] from her medication, as recently as July 2016 she denied this was an issue (Exhibit 15F). The claimant does not require use of a brace on the upper or lower extremities, and while she has reported using a cane at times, there is little to no mention of the use of such a device in the medical evidence, and the claimant acknowledged at the hearing that a cane was not prescribed by a physician. The claimant has not required recurrent inpatient hospitalizations for physical problems, crisis center visits, recurrent surgeries, or prolonged physical therapy. The claimant has regularly reported that her pain was a 1-3 on a scale of 1-10, which is far from debilitating, and at times, she has acknowledged walking and swimming up to four days a week for exercise, Her gait was mostly reported as normal, and while she alleged at hearing that he knee would give out daily, her reports to doctors fail to establish anywhere near this frequency. She has generally been found to have normal strength and sensation throughout her body, and straight leg raise tests have been negative. Her most frequent treatment has come from the Physicians Associates, and generally, this has been simply to get refills on medication. Moreover, it has regularly been stated that her pain and asthma is [sic] controlled with her medication. The claimant's activities of daily living are self-restricted, as no treating source has advised the claimant to stay home all day, lie down during the day, or to restrict activities of daily living in any manner. Nor has the claimant been advised to refrain from performing all gainful work activity.

(R. 33).[3] Like formulating a claimant's RFC, weighing the subjective symptoms is within the ALJ's province. To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence,

---

[3] Plaintiff takes issue with the ALJ's statements that her asthma was under control and that she did not require recurrent inpatient hospitalizations. I find the ALJ's assessment supported by substantial evidence. The ALJ thoroughly discussed Plaintiff's hospitalizations in July 2014 and February 2015 for asthma exacerbations as well as her emergency room visit in January 2015 for an asthma exacerbation (R. 30-31). While outpatient records document treatment for asthma and wheezing, as the Commissioner indicates many of the records show Plaintiff had no respiratory distress, minimal to no wheezing, normal respiratory rhythm and effort, and normal lung examinations. Even when examination revealed that Plaintiff was wheezing (February 25, 2015), the progress note indicated Plaintiff denied shortness of breath while showering or doing dishes (R. 712). *See* doc. 18, p.22.

the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. In the end, the ALJ's decision is supported by substantial evidence.

### 2. *Appeals Council*

When she requested Appeals Council review, Plaintiff submitted additional evidence, a Physical Medical Source Statement completed by treating doctor (Dr. Eyma) on August 7, 2017, over four months after the ALJ's unfavorable decision. The Appeals Council found the additional evidence did not show a reasonable probability that it would change the outcome of the decision and denied review. Plaintiff asserts the Appeals Council should have granted review because the additional evidence she submitted was new and material, related to the period at issue, and a reasonable probability existed that the additional evidence would change the outcome of the hearing decision. Upon consideration, I find the Appeals Council did not err in denying Plaintiff's request for review.

Title 20 C.F.R. § 404.970 sets forth the circumstances when the Appeals Council will review the ALJ's decision. When Plaintiff requested Appeals Council review on May 10, 2017, a revised version of § 404.970, effective on January 17, 2017, was in force. The 2017 version of § 404.970 raised the bar for obtaining Appeals Council review of an ALJ's unfavorable decision. The revised regulation adds the requirement of a "reasonable probability" that the additional evidence would change the decision. The prior version did not include this requirement, although the Eleventh Circuit case law imposed a "reasonable possibility" requirement. Under the revised regulation, § 404.970(a)(5), the Appeals Council reviews a case if the claimant proffers "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the

outcome of the decision." 20 C.F.R. § 970(a)(5) (2017). Evidence is material if "a reasonable probability exists that the evidence will change the administrative outcome." *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (internal citations omitted). New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." *Id.*

The new version also requires a showing of good cause for the failure to submit the additional evidence earlier. *See* 20 C.F.R. § 404.970(b).[4] The Appeals Council's Notice of Action advised Plaintiff that she must "show good cause for why [she] missed informing us about or submitting the new evidence earlier," but in denying Plaintiff's request for review the Appeals Council did not address whether Plaintiff had satisfied the good cause requirement. *See* doc. 14-2, pp. 1-2. Rather, the Appeals Council denied review because it "found the new evidence did not show a reasonable probability that it would change the outcome of the decision." Although I question whether Plaintiff had good cause for failing to submit Dr. Eyma's opinions earlier, following the Eleventh Circuit's lead in *Bailey v. Comm'r of Soc. Sec.*, I will limit my consideration to the new § 404.970(a)(5) criteria and will not address § 404.970(b)'s good cause requirement.

---

[4] Specifically, § 404.970(b) provides:
 The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because: (1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to: (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person; (ii) There was a death or serious illness in your immediate family; (iii) Important records were destroyed or damaged by fire or other accidental cause; (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

*See Bailey*, 2019 WL 3383638, n.6 (11th Cir. July 26, 2019) ("leaving for another day the implications of these amendments" and instead applying previous version of regulation where Appeals Council did not require a good cause showing and the parties did not argue that the good cause requirement applied or affected the outcome).[5]

Turning to the additional evidence Plaintiff submitted to the Appeals Council, the four-page Physical Medical Source Statement by primary care physician, Dr. Rachel Eyma completed on August 7, 2017, more than four months after the ALJ's decision, is a fill-in-the-blank form. On the form, Dr. Eyma lists Plaintiff's diagnoses as "herniated disc L spine, chronic knee pain;" and her prognosis as "fair;" her symptoms as "knee pain, locking, giving way, instability, chronic back pain." Dr. Eyma indicates Plaintiff has daily back/knee pain that is worse with prolonged standing/ sitting/ and walking; pain that is a 3-5 out of 10 with medication, and 8-10 out of 10 without medication; paralumbar spasms and right knee swelling (R. 7). Dr. Eyma opines that Plaintiff is limited to 1/2 block of walking without rest or severe pain, and limits her to 15 minutes of sitting, and 15 minutes of standing at one time (R. 7-8). She additionally opines that Plaintiff can sit for less than two hours and stand/ walk for less than two hours in an 8-hour workday, and would need a job where she can shift positions at will from sitting to standing or walking (R. 8). When asked "What is the earliest date that the described symptoms and limitations in this questionnaire apply," Dr. Eyma indicates "several years (at least since 2011)" (R. 10). Although the top of the form directs the physician to "Attach relevant treatment notes, radiologist reports, laboratory and test results as appropriate," Dr. Eyma did not attach anything (R. 7).

---

[5] In the Joint Memorandum of Law filed with this Court, neither Plaintiff nor the Commissioner cite to the newer version of § 404.970, nor recognize that its requirements are more cumbersome than the previous version. And both parties cite cases similar to this case but applying the previous version of the regulation.

In denying Plaintiff's request for review, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" and explained:

> You submitted the Medical Source Statement from Rachel Eyma, M.D. dated August 7, 2017 but relating back to "at least 2011" (4 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

(R. 1-2). Where, as here, the Appeals Council did not consider and exhibit the additional evidence and denied review, its decision is subject to judicial review. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1321 (11th Cir. 2015). Federal courts must review *de novo* the Appeals Council's decision as to whether the additional evidence meets the new, material, and chronologically relevant standard. *Id.* If the Appeals Council erroneously refused to consider newly submitted evidence, it committed legal error and remand is appropriate. *Id.*

Plaintiff asserts that Dr. Eyma's opinions are material as she is a treating source and calls her report "highly probative" (doc. 18, p.29). However, the symptoms and diagnoses (herniated disc and chronic knee pain) on Dr. Eyma's Physical Medical Source Statement are the same ones the ALJ already considered in the record. And the clinical findings (paralumbar spasms and knee swelling) and the pain severity on Dr. Eyma's form match the clinical findings and pain ratings in the record and discussed by the ALJ. In fact, the ALJ considered and discussed the treatment records from Physicians Associates and Dr. Eyma (presumably the same records upon which Dr. Eyma based her post-decision opinions). She also considered and assigned little weight to a previous opinion from Dr. Eyma that Plaintiff is unable to work. The ALJ found Dr. Eyma's previous opinion lacked detail and was not stated in functional terms, but more importantly, she explained that "the records from Physician Associates often note few positive objective findings that would support a more restrictive RFC than that assessed herein." She explained, "those

11

treatment notes frequently state the claimant is 'doing well,' and her pain is controlled with medication" (R. 33). Simply put, Dr. Eyma's routine office notes and those of other treating sources document the symptoms, diagnoses, and clinical findings listed on the new form but do not support Dr. Eyma's severe functional limitations. As already noted, the form directed Dr. Eyma to attach supporting evidence for her opinions, but she did not. Even Plaintiff recognized, "[t]he record reflects that Plaintiff has been treating with Dr. Eyma since at least 2014 … and [ ] began treating at Dr. Eyma's practice, Physicians Associates, prior to June of 2012" (doc. 18, p.28). Thus, it is unclear why Dr. Eyma opines that Plaintiff's limitations began "at least since 2011" (R. 7).[6]

Citing *Washington*, *supra*, Plaintiff maintains that faced with new opinion evidence the Appeals Council erred by concluding it was not material. *Washington*, 806 F.3d at 1321 (doc. 18, p.28). But the evidence the Eleventh Circuit found new and material in *Washington* differs from the additional evidence Plaintiff presented in this case. In *Washington*, the previous version of §

---

[6] Faced with similar situations where claimants presented new opinion evidence to the Appeals Council, other courts have recently noted that "there is no requirement in the regulations for a direct correspondence between an [ALJ's] RFC and a specific medical opinion on the functional capacity in question." *Collins v. Berryhill*, 5:17-cv-249-MJF; 2019 WL 1434584, *16 (N.D. Fla. March 29, 2019) (affirming Appeals Council's denial of review after it received additional Mental Impairment Questionnaire, concluding it did not show a reasonable probability of changing the outcome of the decision). *See also Hargress, supra* (finding new physical capacities form not material evidence where there was no reasonable possibility that the new evidence would change the administrative result because it was inconsistent with medical records); *Azad v. Comm'r of Soc. Sec.*, 6:18-cv-195-Orl-28DCI, 2018 WL 7199491 (M.D. Fla. Dec. 20, 2018) (finding Appeals Council did not err in denying review where new medical source statement did not show a reasonable probability of changing the outcome of the ALJ's decision). In *Hargress*, the court noted that the physical capacities form completed by the treating doctor in 2015 indicated that the claimant's limitations dated back to 2013, but nothing in the form or any other documents indicated the treating doctor, who had only treated claimant since 2015, had looked at the claimant's past medical records. *Hargress*, at 1310.

404.970 was in force and the Eleventh Circuit concluded the Appeals Council erred in denying review because the additional opinions from Dr. Wilson constituted new, noncumulative evidence not previously in the record. The *Washington* court explained that Dr. Wilson's opinions were not cumulative because "there is no other evidence in the record addressing the combined effect of Mr. Washington's cognitive limitations and hallucinations, which Dr. Wilson explained caused an extreme degree of limitation in his social interactions, sustaining concentration, and persistence." *Id.* at n.6. Thus, Dr. Wilson's opinions established a reasonable possibility that Washington had an impairment that met or equaled listing 12.04. *Washington*, at 1321. Interestingly, in *Washington*, the claimant had provided additional evidence from Dr. Tulao, another treating physician too, but both the district court and the Eleventh Circuit affirmed the Appeals Council's finding that Dr. Tulao's opinions were not material. The district court had noted that Dr. Tulao's opinions did not refer to any new medical findings or diagnoses. And the Eleventh Circuit found that the portion of Dr. Tulao's questionnaire listing symptoms and medications was cumulative as it was evidence already in the record, and the remaining information in the questionnaire was immaterial as it made no specific findings or diagnoses.

While I find Plaintiff's additional evidence is new, as it did not exist at the time of the ALJ's decision, I find the Appeals Council did not err in concluding that the additional evidence from Dr. Eyma does not show a reasonable probability of changing the outcome of the ALJ's decision and did not err in declining to consider it. *See generally Sorter v. Comm'r of Soc. Sec.*, 773 Fed. App'x. 1070, 1072 (11th Cir. May 16, 2019) (declining to follow the explicitly limited holding in *Washington* and finding Appeals Council did not err in refusing to consider additional evidence); *Boylan v. Comm'r of Soc. Sec.*, 6:18-cv-889-Orl-DCI, 2019 WL 3413524 (M.D. Fla. July 29, 2019) (finding Appeals Council did not err in concluding that new opinion evidence from

treating physicians had no reasonable possibility of changing administrative result); *Collins, supra,* at \*16 (finding newly submitted questionnaire completed nine months after ALJ's decision did not indicate whether doctor completing questionnaire based his opinions solely on assessments prior to ALJ's decision or on assessments of conditions after ALJ's decision and noting that doctor did not provide additional supporting treatment notes, test results or otherwise support conclusions even though form provided opportunity for him to do so); *Parker v. Berryhill*, 4:18-cv-00210-JEO, 2019 WL 2928841 (N.D. Ala. July 8, 2019) (finding Appeals Council did not err in concluding new physical capacity evaluation form from treating physician was not material evidence with reasonable probability of changing administrative result because opinions marked on the form were not supported by physician's treatment note dated nineteen months earlier than evaluation). *See contra Keene v. Comm'r of Soc. Sec.*, 2:17-cv-586-FtM-38CM, 2019 WL 317441 (M.D. Fla. Jan. 7, 2019) (finding Appeals Council erred in denying review as there was reasonable probability that new evidence would change ALJ's decision where new evidence was psychiatrist's treatment notes and status report that included an additional diagnosis of schizophrenia that ALJ had not had opportunity to consider and the record before the ALJ had not included any psychiatrist at all).

  *D.* *Conclusion*

  For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

  DONE and ORDERED in Tampa, Florida on September 4, 2019.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE